# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| HAROLD TRENT BUTLER,<br>*Plaintiff*, | |
| v. | No. 3:18-cv-00545 (JAM) |
| KYLE SAMPOGNARO *et al.*,<br>*Defendants*. | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Harold Trent Butler has filed this lawsuit against numerous police officers of the police department in Hamden, Connecticut. He claims that he was subject to false arrest and malicious prosecution in violation of his rights under the Fourth Amendment. Because the officers had at least arguable probable cause to arrest and initiate the prosecution of Butler, they are entitled to qualified immunity, and I will grant their motion for summary judgment.

### BACKGROUND

The following facts are drawn from the parties' statements of undisputed facts as well as from the Court's review of the bodycam video exhibits relied on by both parties. Harold Trent Butler and his then-girlfriend Kamiya Knox shared a house in Hamden, Connecticut. On the night of December 10, 2016, Jacqueline Perez—a friend of Knox—placed a 911 call to the police to report that Butler was at the house where he was assaulting Knox.

When the police arrived, Knox answered the door. She was wet and wearing only a towel, and she came outside the house. Butler then appeared in the doorway in his underwear, and he tried to close the storm door on the police but was stopped by the officers. Butler was then handcuffed and temporarily detained in a police cruiser pending further investigation by the police at the scene.

The officers questioned Knox and Butler, who provided very different accounts about what had happened. Knox claimed that Butler was upset that she had been at a New Haven night club with her friends and had been sending her angry texts. She asked her friends to bring her home, and when they got to the house Butler was verbally abusive. Almost immediately after her friends left, Butler grabbed her by the hair and dragged her to the basement where he kicked and/or stomped her when she tried to get off the floor. Knox also showed the officers that one of her fingers was dislocated. Knox told the officers that she thought she "was going to die," that Butler "is a monster," and that she was "scared" of him.

By contrast, Butler claimed that *he* was the victim—that he had been "jumped" by three to four females, two of them armed with knives, one of whom stabbed him. He showed officers a wound on his neck. When asked about the wound to Butler's neck, Knox denied placing her hands on Butler or harming him.

The officers saw signs inside the house that were consistent with some kind of physical struggle. They saw droplets of blood in the basement, kitchen, and bedroom, and they also observed smashed glassware in the kitchen and that the basement furniture was in disarray.

While still on the scene, the police contacted two of Knox's friends who had come to the house with Knox that night (including Jacqueline Perez who had placed the 911 call) and interviewed them in the parking lot of a nearby McDonalds restaurant. Although the parties dispute some of the details about what Perez said, Butler does not dispute that Perez told the police that there was an altercation in which both Butler and Knox were on the floor and that Perez and two other female friends tried to keep them apart.[1]

---

[1] Perez also said that Butler did not strike Perez or Knox. Doc. #27-2 at 5 (¶ 33). This was not necessarily inconsistent with Knox's account; Knox told the police that Butler grabbed and dragged her to the basement after her friends had left.

Butler was arrested and charged shortly thereafter with disorderly conduct, in violation of Connecticut General Statutes § 53a-182, and third-degree assault, in violation of Connecticut General Statutes § 53a-61.[2] The prosecution was later terminated by means of *nolle prosequi*, and Butler filed this lawsuit against the defendant police officers pursuant to 42 U.S.C. § 1983 alleging that he was subject to false arrest and malicious prosecution in violation of his Fourth Amendment rights. Defendants have now moved for summary judgment.[3]

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

The Fourth Amendment protects the right to be free from unreasonable search and seizure. *See* U.S. Const. amend. IV. A plaintiff may generally claim a violation of his right to be

---

[2] Conn. Gen. Stat. § 53a-182(a) provides that one is guilty of disorderly conduct if "with intent to cause inconvenience, annoyance, and alarm, or recklessly creating a risk thereof . . . [one] engages in fighting or in violent, tumultuous, or threatening behavior." Conn. Gen. Stat. § 53a-61(a) provides that one is guilty of third-degree assault if "with intent to cause physical injury to another person, he causes such injury to such person."

[3] In light of the absence of any evidence to show the personal involvement of defendants Jeremy Brewer, Justin Thibault, and Enrique Rivera-Rodriguez, Butler agrees that these defendants are entitled to summary judgment. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). This ruling addresses Butler's claims against the remaining police officer defendants.

free from unreasonable seizure if he has been subject to a false arrest or malicious prosecution. *See, e.g., Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). But the existence of probable cause is a complete defense to any claims for false arrest and malicious prosecution. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010).

Where, as here, an officer is subject to a lawsuit for money damages on grounds that he has violated a suspect's rights under the Fourth Amendment, the officer may assert a defense of qualified immunity. Qualified immunity shields government officials from claims for money damages unless a plaintiff shows the officer has violated clearly established law such that any objectively reasonable officer would have understood that his or her conduct amounted to a violation of the suspect's constitutional rights. *See Mara v. Rilling*, 921 F.3d 48, 68–69 (2d Cir. 2019).

In the context of lawsuits involving a claim of false arrest or malicious prosecution, an officer is entitled to qualified immunity if she had at least *arguable* probable cause to have made the arrest and to have initiated a prosecution. *See Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013). Arguable probable cause exists if either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (cleaned up).

Defendants argue that they are entitled to qualified immunity on the ground that there was at least arguable probable cause for Butler's arrest and the initiation of a prosecution. I agree. When the police arrived at the house, they saw physical evidence of an apparent fight but were confronted with starkly different accounts from Knox and Butler about what happened.

4

Knox told the police that Butler had attacked her, and she showed the police her dislocated finger. Knox's account was corroborated in part by the 911 call reporting the assault. If the officers believed Knox's account, then they undoubtedly had probable cause to conclude that Butler had engaged in both the assault and disorderly conduct offenses for which he was arrested and charged.

Although Butler wishes that the police had credited his contrary account over what they heard from Knox, the Fourth Amendment did not require the police to believe him. As the Second Circuit has made clear, "[p]robable cause does not necessarily disappear simply because an innocent explanation may be consistent with facts that an officer views as suspicious," and officers are "not required to accept [a suspect's] account on faith" but are "entitled to weigh [the suspect's] explanation ... against the facts on the other side of the ledger." *Mazza*, 825 F.3d at 102.

Butler does not point to any part of the evidence that made Knox's account no less than inherently incredible or unworthy of belief, such that no objectively reasonable law enforcement officer could have believed her. Indeed, at the oral argument of this motion, Butler's counsel conceded that the police had probable cause at the time of arrest and abandoned Butler's false arrest claim.

That leaves only Butler's claim for malicious prosecution. "Ordinarily, in the absence of exculpatory facts which became known after an arrest, probable cause to arrest is a complete defense to a claim of malicious prosecution." *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008); *see also Kinzer v. Jackson*, 316 F.3d 139, 143-44 (2d Cir. 2003). Because there is no allegation that the police learned any new facts in the short time between Butler's arrest and the initiation of his prosecution the following day on the same charges for which he was arrested,

5

that the police had at least arguable probable cause at the time of arrest suffices as well to establish arguable probable cause for prosecution.

Butler protests that the police report (which issued on December 11, 2016, the day after the arrest) was inaccurate in various ways. Doc. #1 at 13-14 (¶ 9(E)). But these alleged inaccuracies are not significant enough to undermine the basis for probable cause to commence the prosecution, much less to undermine the existence of arguable probable cause for purposes of qualified immunity. Moreover, any inaccuracies in the police report do not mean that the underlying facts changed; the relevant issue is whether as an objective matter there was probable cause (or at least arguable probable cause) to prosecute Butler for assault and disorderly conduct, no matter what any police report may have said. Because there was at least arguable probable cause, defendants are entitled to qualified immunity.

Finally, defendants further argue that they are entitled to summary judgment on the malicious prosecution count for an additional reason: the charges against Butler which were terminated pursuant to a *nolle prosequi* did not terminate in his favor. A claim for malicious prosecution requires a plaintiff to prove that the charge against him was terminated in his favor. *See, e.g., Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016). Defendants acknowledge that the charges against Butler were terminated by means of a *nolle prosequi* and that in *Spak v. Phillips*, 857 F.3d 458 (2d Cir. 2017), the Second Circuit concluded that "as a general matter a *nolle prosequi* constitutes a 'favorable termination' for the purpose of determining when a Section 1983 claim accrues," *id.* at 463, subject to exception only "if [the *nolle prosequi*] entered for reasons that are not indicative of the defendant's innocence." *Id.* at 464 (internal quotations omitted).

6

But defendants argue that *Spak* has been superseded, or at least undermined, by the Second Circuit's more recent decision in *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018), which declared that the "favorable termination" requirement for a § 1983 malicious prosecution claim is *not* met unless the plaintiff "adequately plead[s] that the termination of the prosecutions against him affirmatively indicated his innocence," as distinct from alleging a "dismissal on any number of procedural or jurisdictional grounds, all of which fail to affirmatively indicate innocence." *Id.* at 28. In so ruling, *Lanning* distinguished the federal law requirement that there be an affirmative indication of innocence from the New York common law requirement that allowed for an inference of favorable termination on a lesser showing that "the trial court's reasons for dismissing the charges are not inconsistent with … innocence." *Id.* at 27 (internal citation and quotations omitted).

The Second Circuit's ruling in *Lanning* does not cite or discuss *Spak*. Nevertheless, it may be argued that *Spak* is inconsistent with *Lanning* in two ways with respect to the favorable termination element of a § 1983 malicious prosecution claim. First, *Spak* relies primarily on state law, while *Lanning* relies on federal law. *Compare Spak*, 857 F.3d at 461 ("In the absence of federal common law, the merits of a claim for malicious prosecution under Section 1983 are governed by state law") *with Lanning*, 908 F.3d at 25 ("We now clarify that federal law defines the elements of a § 1983 malicious prosecution claim, and that a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements").

Second, *Spak* generally presumes a *nolle prosequi* to be a favorable termination, unless there are shown "reasons that are not indicative of the defendant's innocence." 857 F.3d at 464. By contrast, *Lanning* declines to presume any termination of a prosecution is a favorable termination absent "affirmative indications of innocence." 908 F.3d at 25. This distinction in

7

formulation may prove significant in the not-uncommon situation where the state court record of a *nolle* proceeding does not clearly establish the reason for the disposition.

In any event, I need not further address whether *Spak* and *Lanning* are consistent with one another. Because I conclude that Butler has failed to show the absence of arguable probable cause to defeat qualified immunity, I need not decide if there is a genuine issue of fact whether the prosecution was terminated in Butler's favor.

## CONCLUSION

For the reasons stated in this ruling, the Court GRANTS the motion for summary judgment (Doc. #27) on the grounds that (1) defendant police officers Jeremy Brewer, Justin Thibault, and Enrique Rivera-Rodriguez were not personally involved in the alleged deprivation of plaintiff's constitutional rights, and (2) the remaining defendant police officers had at least arguable probable cause for plaintiff's arrest and to initiate prosecution. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 6th day of August 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge